FILED
2013 Jun-28  PM 04:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **IBERIABANK, a Louisiana state banking corporation, as successor to CAPITALSOUTH BANK, as successor to BANK OF ALABAMA,** )<br>)<br>)<br>)<br>) | |
| **Plaintiff,** ) | |
| )<br>**v.** )<br>) | |
| **JOE LEE MIDDLEBROOKS ENTERPRISES, INC., an Alabama corporation, JOSEPH LEE MIDDLEBROOKS, TERRI D. MIDDLEBROOKS, n/k/a TERRI DILL, REBECCA LYNN KNIPPERS, and FIRST FINANCIAL BANK, an Alabama state chartered bank,** )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CIVIL ACTION NO.**<br>_____ |
| **Defendants.** )<br>) | |

## COMPLAINT

**COMES NOW** IBERIABANK, a Louisiana state banking corporation, as assignee of the Federal Deposit Insurance Corporation, as receiver for CapitalSouth Bank, successor-in-interest to Bank of Alabama ("Lender"), and for its Complaint against defendants Joe Lee Middlebrooks Enterprises, Inc., an Alabama Corporation ("JLME"), Joseph Lee Middlebrooks ("J. Middlebrooks"), Terri D. Middlebrooks, n/k/a Terri Dill ("T. Dill"), Rebecca Lynn Knippers ("Knippers"), and First Financial Bank ("First Financial"), and states as follows:

1

## JURISDICTION AND VENUE

1.     Plaintiff Lender is a state banking corporation organized under the laws of the State of Louisiana with its principal place of business and main office in Lafayette, Louisiana.

2.     Defendant JLME is a corporation organized under the laws of Alabama with its principal place of business and main office in Jefferson County, Alabama.

3.     Defendant J. Middlebrooks is an individual domiciled in Alabama.

4.     Defendant T. Dill is an individual domiciled in Alabama.

5.     On information and belief, Defendant Knippers is an individual domiciled in Alabama who holds title to certain real property located in Jefferson County, Alabama.

6.     Defendant First Financial is an Alabama state chartered commercial bank with its principal place of business and main office in Jefferson County, Alabama.

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship and the amount in controversy is in excess of $75,000.00.

8.     Venue is proper pursuant to 28 U.S.C. § 1391.

1/2502566.4

## STATEMENT OF FACTS

**A.     The JLME Loan and J. Middlebrooks Guaranty.**

9.     Lender made a loan to JLME in the principal amount of $1,100,000.00 (as previously or subsequently made, renewed, modified, amended, and/or revised from time to time, the "JLME Loan") pursuant to the terms of that certain *Promissory Note* entered into by and between Lender and JLME dated August 10, 2009 (as previously or subsequently renewed, modified, amended, and/or revised from time to time, the "JLME Note").  JLME utilized the JLME Loan proceeds to refinance an existing debt to Lender.  A true and correct copy of the JLME Note is attached hereto as **Exhibit A** and incorporated by reference herein.

10.     The JLME Note is further governed by that certain *Commercial Loan Agreement* entered into by and between Lender and JLME dated June 10, 2005 (as previously or subsequently renewed, modified, amended, and/or revised from time to time, the "JLME Commercial Loan Agreement").  The JLME Commercial Loan Agreement provides, among other things, that JLME agrees to pay Lender's expenses of collecting the JLME Note, including attorneys' fees, court costs, and other legal expenses.  A true and correct copy of the JLME Commercial Loan Agreement is attached hereto as **Exhibit B** and incorporated by reference herein.

1/2502566.4

11.     Pursuant to the terms of the JLME Note and certain extensions granted by Lender from time to time, JLME agreed to pay all unpaid indebtedness evidenced by the JLME Note, including, without limitation, unpaid principal and accrued and unpaid interest and all fees and other charges, no later than January 31, 2013 (the "JLME Note Maturity Date").

12.     JLME became in default under the terms and conditions of the JLME Note for, among other things, the failure to make payments when due, including without limitation, failure to pay all outstanding amounts due on the JLME Note Maturity Date.

13.     Lender notified JLME of its default under the JLME Note and demanded payment in full by letter dated April 23, 2013 (the "JLME Demand Letter").  A true and correct copy of the JLME Demand Letter is attached hereto as **Exhibit C** and incorporated by reference herein.

14.     To date, JLME has not paid its obligations under the JLME Note.

15.     To induce Lender to make the JLME Loan, J. Middlebrooks absolutely and unconditionally guaranteed to Lender the payment and performance of each and every debt, liability, and obligation of JLME, including without limitation, the JLME Loan, as evidenced by that certain *Guaranty* dated June 10, 2005 (the "J. Middlebrooks Guaranty").   A true and correct copy of the J.

4

Middlebrooks Guaranty is attached hereto as **Exhibit D** and incorporated by reference herein.

16.     In addition to J. Middlebrooks's obligation under the J. Middlebrooks Guaranty for payment and performance of the JLME Note, the J. Middlebrooks Guaranty provides that J. Middlebrooks shall pay all expenses of collection, enforcement, or protection of Lender's rights and remedies under the J. Middlebrooks Guaranty and the JLME Note, including but not limited to, attorneys' fees, court costs, and other legal expenses.

17.     J. Middlebrooks became in default under the terms of the J. Middlebrooks Guaranty for, among other things, failure to pay JLME's obligations under the JLME Note when due.

18.     Lender notified J. Middlebrooks of his default under the J. Middlebrooks Guaranty in the JLME Demand Letter and demanded payment in full.

19.     To date, J. Middlebrooks has not paid his obligations under the J. Middlebrooks Guaranty.

20.     As of June 28, 2013, and solely with respect to the JLME Note and JLME Commercial Loan Agreement, JLME and J. Middlebrooks, jointly and severally, owe Lender the principal amount of $937,596.82 plus accrued and

accruing interest, late fees, attorneys' fees, costs, and other legally-recoverable charges.

**B.    The Home Loan.**

21.    Lender made a loan to J. Middlebrooks and T. Dill in the principal amount of $595,699.62 (as previously or subsequently made, renewed, modified, amended, and/or revised from time to time, the "Home Loan") pursuant to the terms of a certain promissory note entered into by and between Lender, on the one hand, and J. Middlebrooks and T. Dill, on the other, dated December 15, 2008 (as previously or subsequently renewed, modified, amended, and/or revised from time to time, the "Home Note").  J. Middlebrooks and T. Dill utilized the Home Loan proceeds to refinance an existing home mortgage debt to Lender.  A true and correct copy of the Home Note is attached hereto as **Exhibit E** and incorporated by reference herein.

22.    Pursuant to the terms of the Home Note, and certain extensions granted by Lender from time to time, J. Middlebrooks and T. Dill agreed to pay all unpaid indebtedness evidenced by the Home Note, including, without limitation, unpaid principal and accrued and unpaid interest and all fees and other charges, no later than January 31, 2013 (the "Home Note Maturity Date").

23.    In addition to J. Middlebrooks's and T. Dill's obligation to pay principal, interest (including default interest) and late charges owing pursuant to

6

the Home Note, J. Middlebrooks and T. Dill also agreed in the Home Note to pay Lender's costs of collection, including any attorney's fees incurred and court costs.

24.    J. Middlebrooks and T. Dill became in default under the terms and conditions of the Home Note for, among other things, the failure to make payments when due, including without limitation, failure to pay all outstanding amounts due on the Home Note Maturity Date.

25.    Lender notified J. Middlebrooks and T. Dill of their default under the Home Note and demanded payment in full by letter dated April 23, 2013 (the "Home Note Demand Letter").  A true and correct copy of the Home Note Demand Letter is attached hereto as **Exhibit F** and incorporated by reference herein.

26.    To date, J. Middlebrooks and T. Dill have not paid their obligations under the Home Note.

27.    As of June 28, 2013, and solely with respect to the Home Note, J. Middlebrooks and T. Dill, jointly and severally, owe Lender the principal amount of $343,913.06 plus accrued and accruing interest, late fees, attorneys' fees, costs, and other legally-recoverable charges.

**C.    The Fraudulent Transfer of the Property.**

28.    Upon information and belief, Knippers is J. Middlebrooks's sister.

29.    Upon information and belief, prior to the JLME Maturity Date and Home Loan Maturity Date, J. Middlebrooks realized that he would not be able to

7

meet his obligations to his creditors, including Lender.  J. Middlebrooks therefore acted to fraudulently transfer his assets and wealth, including, but not limited to, transferring certain real property located in Jefferson County, Alabama to Knippers.

30.     Upon information and belief, on or about September 25, 2012, J. Middlebrooks recorded, or caused to be recorded, a transfer of his interest in real property located at 2611 18th Avenue North, Bessemer, Alabama (the "Property") to Knippers by way of warranty deed (the "Transfer").  A true and correct copy of the deed effectuating the Transfer is attached hereto as **Exhibit G** and incorporated by reference herein.

31.     Upon information and belief, J. Middlebrooks made the Transfer to Knippers with the actual intent to hinder, delay, or defraud Lender.

32.     Upon information and belief, the following "badges of fraud" were present with regard to the Transfer, without limitation: the Transfer was to an insider of J. Middlebrooks; J. Middlebrooks retained possession or control of the Property; the Transfer was concealed; the Transfer was of substantially all of J. Middlebrooks's individual assets; J. Middlebrooks had been threatened with suit before the Transfer; J. Middlebrooks was insolvent immediately before the Transfer was made or became insolvent immediately after the Transfer was made;

and the Transfer occurred shortly before or shortly after J. Middlebrooks incurred substantial debts.

33.     Upon information and belief, J. Middlebrooks did not receive reasonably equivalent value in exchange for the Transfer.

34.     Upon information and belief, at the time of the Transfer, either (a) J. Middlebrooks was engaged, or was about to engage in, business and transactions for which his respective remaining assets were unreasonably small in relation to the business or transactions, or (b) J. Middlebrooks intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

35.     Upon information and belief, J. Middlebrooks was either (a) insolvent at the time of the transfer or (b) became insolvent as a result of the Transfer.

36.     Upon information and belief, the Transfer was to Knippers, an insider of J. Middlebrooks, for an antecedent debt, J. Middlebrooks was insolvent at the time of the Transfer, and Knippers had reasonable cause to believe that J. Middlebrooks was insolvent at the time of the Transfer.

37.     On or about December 13, 2012, Knippers executed that certain *Real Estate Mortgage* in favor of First Financial (the "Mortgage").   Pursuant to the Mortgage, Knippers conveyed the Property to First Financial to secure the debt described in the Mortgage.

38.     The Mortgage was recorded with the Judge of Probate of Jefferson County on December 19, 2012, at Book LR201265, Page 3799.  A true and correct copy of the Mortgage is attached hereto as **Exhibit H** and incorporated by reference herein.

## COUNT I – BREACH OF JLME NOTE
## AND JLME COMMERCIAL LOAN AGREEMENT BY JLME

39.     Lender incorporates herein all of the allegations and averments set forth in paragraphs 1 through 38.

40.     The JLME Note and JLME Commercial Loan Agreement are valid and binding contracts.

41.     Lender has fulfilled and performed its obligations under the JLME Note and JLME Commercial Loan Agreement.

42.     JLME is in breach of its obligations owing under the JLME Note and JLME Commercial Loan Agreement for, among other things, failure to make payments as and when due under the terms of the JLME Note.

43.     Despite Lender's written demand, JLME has failed to perform and remains in breach of its obligations owing under the JLME Note and JLME Commercial Loan Agreement.

44.     As a consequence of JLME's breach and failure to pay its obligations on the JLME Loan as and when due under the JLME Note and JLME Commercial Loan Agreement, Lender has suffered damages as set out herein.

10

45.     All amounts due and owing on the JLME Loan and JLME Commercial Loan Agreement are immediately due and payable.

46.     As of June 28, 2013, the principal indebtedness due and owing under the JLME Note and JLME Commercial Loan Agreement totaled $937,596.82, exclusive of unpaid interest (including default interest), late fees, protective advances, and costs, including, without limitation, attorneys' fees and expenses incurred by Lender in collecting the indebtedness, and other legally-recoverable amounts.

47.     Additionally, interest continues to accrue at the per diem rate of $117.20.

WHEREFORE, premises considered, IBERIABANK prays for judgment against JOE LEE MIDDLEBROOKS ENTERPRISES, INC. in the amount of $937,596.82, together with all unpaid interest (including default interest), late fees, protective advances, and costs, including, without limitation, attorneys' fees and expenses incurred by Lender in collecting the indebtedness owing on the JLME Note and JLME Commercial Loan Agreement, and other legally-recoverable amounts.  Lender prays for such other and further relief as this Court deems appropriate.

## COUNT II – UNJUST ENRICHMENT AGAINST JLME

48.    Lender incorporates herein all of the allegations and averments set forth in paragraphs 1 through 38.

49.    JLME accepted and received the benefits of, and was substantially benefited by, the JLME Note and JLME Commercial Loan Agreement.  JLME knew, or should have known, that Lender expected and is entitled to repayment of the JLME Note.

50.    Lender is entitled to recover from JLME under the doctrines of *quantum meruit* or unjust enrichment in an amount of the reasonable value of the principal owed under the JLME Note, together with all unpaid interest (including default interest), late fees, protective advances, and costs, including, without limitation, attorneys' fees and expenses incurred by Lender in collecting the indebtedness owing on the JLME Note and JLME Commercial Loan Agreement, and other legally-recoverable amounts.

WHEREFORE, premises considered, IBERIABANK prays for judgment against JOE LEE MIDDLEBROOKS ENTERPRISES, INC. in the amount of $937,596.82, together with all unpaid interest (including default interest), late fees, protective advances, and costs, including, without limitation, attorneys' fees and expenses incurred by Lender in collecting the indebtedness owing on the JLME Note and JLME Commercial Loan Agreement, and other legally-recoverable

12

amounts.   Lender prays for such other and further relief as this Court deems appropriate.

## COUNT III – BREACH OF
## J. MIDDLEBROOKS GUARANTY BY J. MIDDLEBROOKS

51.   Lender incorporates herein all of the allegations and averments set forth in paragraphs 1 through 38.

52.   The J. Middlebrooks Guaranty is a valid and binding contract.

53.   Lender has met and performed all of its obligations under the J. Middlebrooks Guaranty.

54.   J. Middlebrooks is in breach under the terms of the J. Middlebrooks Guaranty for, among other things, failure to pay the amounts owing on the JLME Loan.

55.   Despite Lender's written demand, J. Middlebrooks has failed to perform and remains in breach of his obligations owing under the J. Middlebrooks Guaranty.

56.   As a consequence of J. Middlebrooks's breach and failure to pay its obligations under the J. Middlebrooks Guaranty, Lender has suffered damages as set out herein.

57.   All amounts due and owing under the J. Middlebrooks Guaranty are immediately due and payable.

58.     As of June 28, 2013, the principal indebtedness due and owing under the J. Middlebrooks Guaranty totaled $937,596.82, exclusive of unpaid interest (including default interest), late fees, protective advances, and costs, including, without limitation, attorneys' fees and expenses incurred by Lender in collecting the indebtedness, and other legally-recoverable amounts.

59.     Additionally, interest continues to accrue at the per diem rate of $117.20.

WHEREFORE, premises considered, IBERIABANK prays for judgment against JOSEPH LEE MIDDLEBROOKS in the amount of $937,596.82, together with all unpaid interest (including default interest), late fees, protective advances, and costs, including, without limitation, attorneys' fees and expenses incurred by Lender in collecting the indebtedness owing on the J. Middlebrooks Guaranty, and other legally-recoverable amounts.  Lender prays for such other and further relief as this Court deems appropriate.

## COUNT IV – BREACH OF HOME
## NOTE BY J. MIDDLEBROOKS AND T. DILL

60.     Lender incorporates herein all of the allegations and averments set forth in paragraphs 1 through 38.

61.     The Home Note is a valid and binding contract.

62.     Lender has fulfilled and performed its obligations under the Home Note.

63.     J. Middlebrooks and T. Dill are in breach of their obligations owing under the Home Loan for, among other things, failure to make payments as and when due under the terms of the Home Note.

64.     Despite Lender's written demand, J. Middlebrooks and T. Dill have failed to perform and remain in breach of their obligations owing under the Home Note.

65.     As a consequence of J. Middlebrooks's and T. Dill's breach and failure to pay their obligations on the Home Loan as and when due under the Home Note, Lender has suffered damages as set out herein.

66.     All amounts due and owing on the Home Loan are immediately due and payable.

67.     As of June 28, 2013, the principal indebtedness due and owing under the Home Note totaled $343,913.06, exclusive of unpaid interest (including default interest), late fees, protective advances, and costs, including, without limitation, attorneys' fees and expenses incurred by Lender in collecting the indebtedness, and other legally-recoverable amounts.

68.     Additionally, interest continues to accrue at the per diem rate of $37.69.

WHEREFORE, premises considered, IBERIABANK prays for judgment against JOSEPH LEE MIDDLEBROOKS and TERRI DILL, jointly and severally,

15

in the amount of $343,913.06, together with all unpaid interest (including default interest), late fees, protective advances, and costs, including, without limitation, attorneys' fees and expenses incurred by Lender in collecting the indebtedness owing on the Home Loan, and other legally-recoverable amounts.  Lender prays for such other and further relief as this Court deems appropriate.

## COUNT V – UNJUST ENRICHMENT
## AGAINST J. MIDDLEBROOKS AND T. DILL

69.     Lender incorporates herein all of the allegations and averments set forth in paragraphs 1 through 38.

70.     J. Middlebrooks and T. Dill accepted and received the benefits of, and were substantially benefited by, the Home Loan.  J. Middlebrooks and T. Dill knew, or should have known, that Lender expected and is entitled to repayment of the Home Loan.

71.     Lender is entitled to recover from J. Middlebrooks and T. Dill under the doctrines of *quantum meruit* or unjust enrichment in an amount of the reasonable value of the principal owed under the Home Loan, together with all unpaid interest (including default interest), late fees, protective advances, and costs, including, without limitation, attorneys' fees and expenses incurred by Lender in collecting the indebtedness owing on the Home Loan, and other legally-recoverable amounts.

WHEREFORE, premises considered, IBERIABANK prays for judgment against JOSEPH LEE MIDDLEBROOKS and TERRI D. MIDDLEBROOKS, n/k/a TERRI DILL, jointly and severally, in the amount of $343,913.06, together with all unpaid interest (including default interest), late fees, protective advances, and costs, including, without limitation, attorneys' fees and expenses incurred by Lender in collecting the indebtedness owing on the Home Loan, and other legally-recoverable amounts.  Lender prays for such other and further relief as this Court deems appropriate.

**COUNT VI – FRAUDULENT TRANSFER
PURSUANT TO ALABAMA CODE § 8-9A-4(a) AGAINST
J. MIDDLEBROOKS, KNIPPERS, AND FIRST FINANCIAL**

72.    Lender incorporates herein all of the allegations and averments set forth in paragraphs 1 through 38.

73.    At all relevant times, Lender was a creditor of J. Middlebrooks.

74.    Pursuant to Alabama Code § 8-9A-4(a), J. Middlebrooks made the Transfer to Knippers with the actual intent to hinder, delay, or defraud Lender, a creditor of J. Middlebrooks.

75.    Certain statutory "badges of fraud" were present with regard to the Transfer, without limitation: the Transfer was to an insider of J. Middlebrooks; J. Middlebrooks retained possession or control of the Property; the Transfer was concealed; the Transfer was of substantially all of J. Middlebrooks's individual

17

assets; J. Middlebrooks had been threatened with suit before the Transfer; J. Middlebrooks was insolvent immediately before the Transfer was made or became insolvent immediately after the Transfer was made; and the Transfer occurred shortly before or shortly after J. Middlebrooks incurred substantial debts.

WHEREFORE, premises considered, and as a result of J. Middlebrooks's fraudulent transfer of the Property to Knippers under Alabama Code § 8-9A-4(a), IBERIABANK demands judgment, pursuant to Alabama Code §§ 8-9A-7 and 8-9A-8, as follows:

(i)     Against JOSEPH LEE MIDDLEBROOKS, REBECCA LYNN KNIPPERS, and FIRST FINANCIAL BANK, avoiding the Transfer from J. Middlebrooks to Knippers;

(ii)    Against JOSEPH LEE MIDDLEBROOKS, REBECCA LYNN KNIPPERS, and FIRST FINANCIAL BANK, attaching the Property;

(iii)   Against JOSEPH LEE MIDDLEBROOKS, REBECCA LYNN KNIPPERS, and FIRST FINANCIAL BANK, enjoining further disposition of the Property;

(iv)    Against JOSEPH LEE MIDDLEBROOKS, REBECCA LYNN KNIPPERS, and FIRST FINANCIAL BANK, appointing a receiver to take charge of the Property;

(v)     Against REBECCA LYNN KNIPPERS for the value of the Property

at the time of the Transfer;

    (vi)   All other forms of relief IBERIABANK may be entitled to at law or equity; and

    (vii)  Providing any other relief the circumstances require and which this Court finds IBERIABANK is entitled.

### COUNT VII – FRAUDULENT TRANSFER
### PURSUANT TO ALABAMA CODE § 8-9A-4(c) AGAINST J.
### MIDDLEBROOKS, KNIPPERS, AND FIRST FINANCIAL

    76.    Lender incorporates herein all of the allegations and averments set forth in paragraphs 1 through 38.

    77.    At all relevant times, Lender was a creditor of J. Middlebrooks.

    78.    Pursuant to Alabama Code § 8-9A-4(c), J. Middlebrooks did not receive reasonably equivalent value in exchange for the Transfer, and J. Middlebrooks (i) was engaged or about to be engaged in a business or transaction for which his remaining assets were unreasonably small in relation to the business or transaction; or (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

    WHEREFORE, premises considered, and as a result of J. Middlebrooks's fraudulent transfer of the Property to Knippers under Alabama Code § 8-9A-4(c), IBERIABANK demands judgment, pursuant to Alabama Code §§ 8-9A-7 and 8-9A-8, as follows:

(i)     Against J. MIDDLEBROOKS, KNIPPERS, and FIRST FINANCIAL, avoiding the Transfer from J. Middlebrooks to Knippers;

(ii)    Against J. MIDDLEBROOKS, KNIPPERS, and FIRST FINANCIAL, attaching the Property;

(iii)   Against J. MIDDLEBROOKS, KNIPPERS, and FIRST FINANCIAL, enjoining further disposition of the Property;

(iv)    Against J. MIDDLEBROOKS, KNIPPERS, and FIRST FINANCIAL, appointing a receiver to take charge of the Property;

(v)     Against KNIPPERS, for the value of the Property at the time of the Transfer;

(vi)    All other forms of relief IBERIABANK may be entitled to at law or equity; and

(vii)   Providing any other relief the circumstances require and which this Court finds IBERIABANK is entitled.

### COUNT VIII – FRAUDULENT TRANSFER
### PURSUANT TO ALABAMA CODE § 8-9A-5(a)
### AGAINST J. MIDDLEBROOKS, KNIPPERS, AND FIRST FINANCIAL

79.     Lender incorporates herein all of the allegations and averments set forth in paragraphs 1 through 38.

80.     At all relevant times, Lender was a creditor of J. Middlebrooks.

81.     Pursuant to Alabama Code § 8-9A-5(a), J. Middlebrooks made the Transfer without receiving reasonably equivalent value in exchange for the Transfer, and either (i) was insolvent at the time of the Transfer; or (ii) became insolvent as a result of the Transfer.

WHEREFORE, premises considered, and as a result of J. Middlebrooks's fraudulent transfer of the Property to Knippers under Alabama Code § 8-9A-5(a), IBERIABANK demands judgment, pursuant to Alabama Code §§ 8-9A-7 and 8-9A-8, as follows:

(i)     Against J. MIDDLEBROOKS, KNIPPERS, and FIRST FINANCIAL, avoiding the Transfer from J. Middlebrooks to Knippers;

(ii)    Against J. MIDDLEBROOKS, KNIPPERS, and FIRST FINANCIAL, avoiding attaching the Property;

(iii)   Against J. MIDDLEBROOKS, KNIPPERS, and FIRST FINANCIAL, avoiding enjoining further disposition of the Property;

(iv)    Against J. MIDDLEBROOKS, KNIPPERS, and FIRST FINANCIAL, avoiding appointing a receiver to take charge of the Property;

(v)     Against KNIPPERS, for the value of the Property at the time of the Transfer;

(vi)    All other forms of relief IBERIABANK may be entitled to at law or equity; and

(vii)   Providing any other relief the circumstances require and which this Court finds IBERIABANK is entitled.

## COUNT IX – FRAUDULENT TRANSFER
## PURSUANT TO ALABAMA CODE § 8-9A-5(b) AGAINST J. MIDDLEBROOKS, KNIPPERS, AND FIRST FINANCIAL

82.   Lender incorporates herein all of the allegations and averments set forth in paragraphs 1 through 38.

83.   At all relevant times, Lender was a creditor of J. Middlebrooks.

84.   Pursuant to Alabama Code § 8-9A-5(b), J. Middlebrooks made the Transfer to Knippers, an insider, for an antecedent debt and J. Middlebrooks was insolvent at the time of the Transfer and Knippers had reasonable cause to believe that J. Middlebrooks was insolvent.

WHEREFORE, premises considered, and as a result of J. Middlebrooks's fraudulent transfer of the Property to Knippers under Alabama Code § 8-9A-5(b), IBERIABANK demands judgment, pursuant to Alabama Code §§ 8-9A-7 and 8-9A-8, as follows:

(i)   Against J. MIDDLEBROOKS, KNIPPERS, and FIRST FINANCIAL, avoiding the Transfer from J. Middlebrooks to Knippers;

(ii)   Against J. MIDDLEBROOKS, KNIPPERS, and FIRST FINANCIAL, attaching the Property;

(iii)   Against J. MIDDLEBROOKS, KNIPPERS, and FIRST FINANCIAL,

enjoining further disposition of the Property;

(iv)    Against J. MIDDLEBROOKS, KNIPPERS, and FIRST FINANCIAL, appointing a receiver to take charge of the Property;

(v)    Against KNIPPERS, for the value of the Property at the time of the Transfer;

(vi)    All other forms of relief IBERIABANK may be entitled to at law or equity; and

(vii)    Providing any other relief the circumstances require and which this Court finds IBERIABANK is entitled.


                                        _/s/ Glenn E. Glover_____
                                        One of the Attorneys for IBERIABANK


**OF COUNSEL:**

**Bradley Arant Boult Cummings LLP**
Glenn E. Glover
James B. Bailey
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
gglover@babc.com
jbailey@babc.com

23

**<u>DEFENDANTS WILL BE SERVED BY PRIVATE PROCESS SERVER:</u>**

Joe Lee Middlebrooks Enterprises, Inc.
c/o Joseph Lee Middlebrooks, Registered Agent
1025 18th Street North
Bessemer, AL  35020

Joseph Lee Middlebrooks
1025 18th Street North
Bessemer, AL  35020

Terri D. Middlebrooks, n/k/a Terri Dill
1720 Triple H Ranch Road
Bessemer, Alabama  35022

Rebecca Lynn Knippers
1394 Lake Trace Lane
Hoover, AL  35244

First Financial Bank
c/o Lynn Joyce, Registered Agent
1630 4th Ave. North
Bessemer, AL  35020

1/2502566.4